UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GLORIA J. FABRE                          CIVIL ACTION

VERSUS                                 NO. 13-76-BAJ-RLB

CAROLYN COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 11, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**GLORIA J. FABRE**                              **CIVIL ACTION**

**VERSUS**                                       **NO. 13-76-BAJ-RLB**

**CAROLYN COLVIN,
ACTING COMMISSIONER
OF THE SOCIAL SECURITY
ADMINISTRATION**

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Gloria J. Fabre (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for a period of disability and disability insurance benefits.[1] (R. Doc. 1); (Tr. 4-6, 11-21).[2] Having found all of the procedural prerequisites met, the Commissioner's determination is now ripe for review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . .").

For the reasons given below, the court **RECOMMENDS** that the decision of the Commissioner **VACATED** and Plaintiff's case **REMANDED** for further administrative proceedings consistent with this opinion.

---

[1] Plaintiff's Complaint and Memorandum in Support of Appeal reference a denial of "Medicare Qualified Federal Employee benefits." (R. Docs. 1 and 13). The application and administrative record in this case pertain to Disability Insurance Benefits under the Social Security Act. (Tr. 11, 82). Defendant's Answer also makes this clarification. "Defendant admits the allegations contained in Paragraph 1 of Plaintiff's Complaint, but would clarify that Plaintiff sought disability insurance benefits under Title II of the Act." (R. Doc. 14).

[2] References to documents filed in this case are designated by: (R. Doc. [docket entry number(s)] at [page number(s)]). Reference to the record of administrative proceedings filed in this case is designated by: (Tr. [page number(s)]).

## II.     STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.     ALJ'S DETERMINATION AND ARGUMENTS OF THE PARTIES

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R §

404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

A hearing was held before the ALJ on September 19, 2011. (Tr. 25-41). The Plaintiff was unrepresented by counsel at the hearing. (Tr. 27-28). Following the hearing and after reviewing the evidence contained in the administrative record, the ALJ issued his decision on January 12, 2012, making the following determinations:

1. Plaintiff last met the insured status requirements of the Social Security Act December 31, 2010.

2. Plaintiff has not engaged in substantial gainful activity from her alleged onset date of October 28, 2005, through her date last insured.

3. Plaintiff has the following severe impairments: depression and disorders of the back.

4. Plaintiff does not have an impairment (or combination of impairments) that meets or medically equals a listing — specifically, Listing 12.04 (Affective Disorders).

5. Plaintiff has the residual functional capacity (RFC) to perform light work except no complex work.

6. Plaintiff is unable to perform any past relevant work.

7. Through the date last insured, considering the Plaintiff's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

(Tr. 13-21).

Plaintiff raises two assignments of error. Each assignment of error concerns the severe impairment of the Plaintiff related to the disorders of the back. First, that the ALJ failed to comply with the treating physician rule in rejecting that physician's opinion, and second, that the ALJ failed to contact Plaintiff's treating physician, Dr. Arnold E. Feldman, M.D. (Dr. Feldman),

for additional information. (R. Doc. 13). Plaintiff asserts that Dr. Feldman is a treating physician and therefore his opinion is entitled to "controlling" weight or, in the alternative, some degree of greater weight than non-treating physicians in accordance with 20 C.F.R. § 404.1527(c). The opinion to which Plaintiff refers is a "Medical Source Statement of Ability to Do Work-Related Activities" that is signed and dated February 8, 2011. (Tr. 312-315). Although there is nothing in this document identifying Dr. Feldman as its author and the signature on the document is illegible, Plaintiff asserts that it was completed by Dr. Feldman and thus the opinions contained therein regarding the physical limitations of the Plaintiff should have been incorporated into the RFC determination by the ALJ.

In the ALJ's decision, he refers to this Medical Source Statement (MSS) as having come from an "unidentified source" and rejects the opinion as it "is not supported by clinical findings and is considered to be inconsistent with the evidence of record." (Tr. 17, 19). No other analysis or basis for rejecting the MSS is provided.

Plaintiff's second assignment of error is that because the ALJ did not credit the MSS to Dr. Feldman, the MSS was not afforded the proper weight and therefore improperly rejected. If the ALJ needed additional information to properly make a determination, he had an affirmative duty to seek out this information. In the instant case, because the signature was illegible, the ALJ had a duty to contact Dr. Feldman in order to confirm authorship of the MSS and verify its accuracy. Failure to do so was reversible error.

The Defendant argues that even though the ALJ has a duty to further develop the facts if needed, it was not necessary to further inquire into the authorship of the MSS because the assessments contained therein "were unsupported, rendering the source immaterial." (R. Doc. 15 at 4). Even if Dr. Feldman was the physician that completed the MSS, the rejection of Dr.

6

Feldman's opinions was still proper. The Defendant asserts that the ALJ was not required to evaluate the § 404.1527(d) factors in accordance with *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000) because *Newton* is limited to cases where the ALJ rejects the sole relevant medical opinion before it. (R. Doc. 15 at 5) (citing *Qualls v. Astrue*, 339 F. Appx. 461, 467 (5th Cir. 2009)). The Defendant characterizes various portions of the medical record as inconsistent with the MSS opinions, including documentation by Dr. Feldman, as evidence of competing opinions of examining physicians justifying any asserted failure to consider the factors under § 404.1527(d) in declining to give any weight to the opinion of a treating physician.

## IV. DISCUSSION

The ALJ is responsible for determining a claimant's residual functional capacity (RFC). *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the claimant's ability, despite any physical and mental limitations. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("The inquiry here is whether the record, read as a whole, yields such evidence . . . ."). However, the ALJ may not establish physical limitations or lack of limitations without the support of medical evidence. *Patterson v. Astrue*, No. 08-13, 2008 WL 5104746, at *4 (N.D. Miss. Dec. 1, 2008). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F .3d 31, 35 (1st Cir. 1999) (citation omitted). Ultimately, the ALJ must "consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza*, 219 F.3d at 393.

The ALJ determined that Plaintiff was capable of performing the full range of light work, with an additional restrictions that it not include "complex work." (Tr. 16). According to the regulations, light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

The ALJ's evaluation of Plaintiff's RFC begins with a review of Plaintiff's medical records. (Tr. 17-19). Specifically with respect to the impairments of the back, the medical records reflect extensive treatment with Dr. Feldman, including MRI testing of the lumbar and cervical spine, lumbar spine epidural injections, cervical spine injection, CT scan of the lumbar spine, and a morphine injection in the lumbar spine. (Tr. 17, 252, 256-58, 261, 265, 268-70, 272, 274, 276). Diagnoses included, among other things, disc herniation and protrusion, spinal stenosis, lumbrosacral spondylosis, vertebral compression fractures, and degenerative disc disease. (Tr. 17).

The medical records also included the February 8, 2011 MSS. (Tr. 312-315). "A medical source's statement about what an individual can still do is a medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC…. Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions." *Kelley v. Commissioner of Social Security*, 3:10-CV-2574-M, 2012 WL 527866, *9 (N.D. Tex. Jan. 17, 2012) (*citing* Social Security Ruling 96-5p). "The regulations recognize that

treating sources are important sources of medical evidence and expert testimony, and that their opinions about the nature and severity of an individual's impairment(s) are entitled to special significance; sometimes the medical opinions of treating sources are entitled to controlling weight." *Id*.

According to the MSS, the Plaintiff had the following limitations: lifting and/or carrying of less than ten pounds; standing and/or walking for less than two hours in an eight hour workday; the need to periodically alternate sitting and standing to relieve pain or discomfort; sitting/standing/walking limited to 15-20 minutes at one time; limited pushing and/or pulling with the upper and lower extremities; no climbing of ramps, stairs, ladders, ropes, or scaffolds; no balancing; occasional kneeling and stooping; no crouching or crawling; limited reaching in all directions (including overhead); occasional handling (gross manipulation) and fingering (fine manipulation); limited speaking; and limited ability to maintain attention and concentration on work tasks for an eight-hour workday. (Tr. 18, 312-315). The opinion in the MSS is inconsistent with the requirements of the RFC of light work determined by the ALJ.

The authorship of the MSS is unclear. The signature on the document is illegible. In the administrative hearing on September 19, 2011, the ALJ, in referring to Dr. Feldman, mentions "a submission date in February, which it's hard to read the doctor's name. But, I assume it must be Dr. Feldman because you're not seeing anybody else, are you?" (Tr. 40). The ALJ indicated that he intended to re-contact Dr. Feldman. In his opinion on January 12, 2012, however, the ALJ refers to the MSS as having come from an "unidentified source" and later rejects this "opinion evidence" as having come from an unidentified source and as it is unsupported by clinical findings and inconsistent with the evidence of record. (Tr. 17, 19). There is nothing in the record to indicate that the ALJ conducted any additional inquiry following the administrative hearing to

9

determine the author of the MSS. While the Plaintiff asserts that the MSS was in fact completed by Dr. Feldman, the record does not establish that fact either.[3]

There is also nothing in the record to indicate that the ALJ considered the MSS as having come from the Plaintiff's treating physician and also no question that the ALJ did not evaluate the MSS in accordance with the § 404.1527(d) factors and *Newton*.

The ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000). When a claimant is unrepresented, the ALJ owes a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). In the instant case, the uncertainty of the authorship of the MSS raises such a duty. This is the only medical source statement contained in the record. No other medical source opined about the specific exertional, postural, manipulative and communicative limitations of the Plaintiff as they would relate to her RFC. The ALJ recognized that the Plaintiff only saw one physician and was thus aware that the MSS was likely prepared by a treating physician. (Tr. 40). If the ALJ had a question about the authorship or source of the MSS, he had an obligation to seek clarification of such before rejecting it as having come from an unidentified source. *See Scott v. Astrue*, 08-CV-0910, 2010 WL 2640531, *9 (W.D.N.Y. June 11, 2010) (ALJ had duty to contact physician is there was any question about authenticity of signature); *Giles v. Astrue*, 08-1088, 2009 WL 2984049, *7 (C.D. Cal. Sept. 17, 2009) ("the fact that the treating physician's signature was illegible is not a legitimate basis upon which to reject the opinion. Rather . . . it creates an

---

[3] The Defendant notes, for example, that the signature on the MSS is inconsistent with Dr. Feldman's signature on other medical records. (R. Doc. 15 at 4) (citing Tr. 265, 267-69, 271, 276). This purported difference in signatures, however, is not provided by the ALJ as a justification for rejecting the MSS or concluding that it was not prepared by a treating physician.

ambiguity about which the ALJ should have inquired. It is inexplicable that the ALJ did not make such a simple inquiry.").

Having concluded that the ALJ erred in not seeking clarification regarding the authorship of the MSS, however, does not necessarily require reversal. The court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure. *See Brock*, 84 F.3d at 728. The court must determine whether, assuming that the MSS was prepared by Plaintiff's treating physician Dr. Feldman, there prejudice to the Plaintiff in the ALJ's rejection of the opinions in the MSS.

Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician) and (c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely . . . most able to provide a detailed, longitudinal picture of your medical impairment(s)"). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.[4]

The ALJ did not provide such a "detailed analysis" and the Commissioner does not argue otherwise. However, the ALJ is not required to consider each of the six factors set out in *Newton* when "'there is competing first-hand medical evidence and the ALJ finds as a factual matter that

---

[4] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).

11

one doctor's opinion is more well-founded than another.'" *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

Thus, the ALJ's decision to reject a treating specialist's opinion must be supported by substantial, contradictory, first-hand evidence from another physician. If the decision is so supported, the ALJ is "not required to go through all six steps in *Newton*." *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534).

The Court is not satisfied that the ALJ's decision was based on the required first hand medical evidence or substantial, contradictory evidence from another physician necessary to reject the opinion of a treating physician. There is nothing in the record directly contradicting the limitations opined in the MSS.[5] There are no competing medical source statements supporting a conclusion that the Plaintiff could perform work consistent with the ALJ's RFC finding. *See Qualls v. Astrue*, 339 F. App'x. 461, 467 (5th Cir. 2009) (*Newton* analysis not required where ALJ was presented with evidence from <u>five</u> treating physicians as well as <u>multiple</u> medical source statements opining that claimant could perform work at varying residual functional capacities).[6]

The only medical opinions regarding the exertional limitations of the Plaintiff are contained in the MSS. Those opinions do not support the RFC of light work as determined by the ALJ. The hypotheticals posed to the vocational expert at the hearing did not incorporate all

---

[5] The RFC determination requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. The ALJ simply concludes that the medical evidence "would not totally preclude her from engaging in light work." (Tr. 19).

[6] The Defendant further argues that the *Newton* decision is limited "to cases where the ALJ rejects the sole relevant medical opinion before it." (Tr. 15 at 5) (citing *Qualls* at 467). While the Defendant points to certain medical findings that may be inconsistent with the specific exertional and other limitations contained in the MSS, there is no contradictory opinion about those limitations. Although the ALJ may weigh competing medical opinions about those limitations and use objective medical evidence to support its determination that one opinion is better founded than another, neither the ALJ nor the court is free to substitute its own opinion.

12

of the limitations contained in the MSS. The ALJ's rejection of the MSS as having come from an unidentified source and containing an illegible signature was a result of a failure to properly develop the record as required. That error was not harmless as it appears likely that the MSS may have been prepared by the Plaintiff's treating physician and likely constitutes the sole relevant medical opinion before the ALJ.

The ALJ compared no competing medical opinions about the Plaintiff's exertional limitations and provided no analysis under *Newton* or § 404.1527(d)(2) for its rejection of the MSS. Without such analysis, and without a sufficient showing that the MSS, if prepared by a treating physician, was appropriately rejected, the court finds that the ALJ failed to properly develop the record, resulting in prejudice to the Plaintiff due to a failure to consider (or reject) the Medical Source Statement under the applicable standards. The ALJ's decision is therefore not supported by substantial evidence.

## V.     RECOMMENTATION

For the reasons discussed above, the Court **RECOMMENDS** that the ALJ's decision be **VACATED** and Plaintiff's case **REMANDED** for further administrative proceedings consistent with this opinion.[7]

Signed in Baton Rouge, Louisiana, on August 11, 2014.

                                **RICHARD L. BOURGEOIS, JR.**
                                **UNITED STATES MAGISTRATE JUDGE**

---

[7] The court declines to recommend that any rehearing be before a different administrative law judge. To whom a case should be remanded is generally within the province of the Commissioner.